Filed 5/16/13

# IN THE SUPREME COURT OF CALIFORNIA

DAVID BIANCALANA,     )
             )
   Plaintiff and Appellant,  )
             )     S198562
   v.          )
             )    Ct.App. 6 H035400
T.D. SERVICE COMPANY,   )
             )    Santa Cruz County
   Defendant and Respondent. )  Super. Ct. No. CV162804
_____)

We granted review to decide whether a trustee may declare void a nonjudicial foreclosure sale of real property when, before the trustee delivers a deed to the highest bidder, the trustee discovers it had mistakenly communicated to the auctioneer an incorrect opening bid by the lender that was less than 10 percent of the actual amount of the bid. As explained below, we conclude that under the circumstances here, the trustee acted within its discretionary authority in declaring the sale void.

## I.

Plaintiff David Biancalana filed an action to quiet title to a parcel of real property located at 434 Winchester Drive in Watsonville, California, alleging that he owned the property because he had been the highest bidder at a trustee's sale that occurred on September 10, 2008. According to Biancalana's complaint, EMC Mortgage Corporation (EMC) was the beneficiary of a loan secured by a deed of trust on the property, and T.D. Service Company (T.D.) was the trustee. After the

1

loan went into default, T.D. issued a notice of trustee's sale. A copy of the notice of sale was attached to the complaint. It stated that the property would be sold at public auction to the highest bidder at the entrance to the county offices in Santa Cruz at 10 a.m. on September 10, 2008. The notice said that "the total amount of the unpaid balance of the obligation secured by the above described Deed of Trust and estimated costs, expenses, and advances is $435,494.74," but added: "It is possible that at the time of sale the opening bid may be less than the total indebtedness due." The notice included a telephone number that could be called the day before the sale to learn "the expected opening bid," if available.

The complaint alleged that on the day before the sale, Biancalana called the telephone number listed on the notice of sale and learned that the opening bid on the property would be $21,894.17. After researching the property, Biancalana called the trustee again and confirmed the amount of the opening bid. Biancalana then obtained a cashier's check for $22,000 and attended the auction the following day.

On the morning of the sale, "the auctioneer for the Defendant Trustee, made at least two calls to Defendant Trustee and spoke with two different Trustee agents to verify the opening bid of $21,894.17." When the auction began, the auctioneer stated he had "been authorized to place an opening bid, on behalf of the beneficiary, in the amount of $21,894.17." Biancalana then bid $21,896. There were no further bids, and the auctioneer announced that "this property is sold to Mr. Biancalana for $21,896.00." Biancalana gave the auctioneer his cashier's check for $22,000.

Two days later, T.D. telephoned Biancalana and said the sale was void because T.D. "did not offer the Property for a high enough bid amount." T.D.

2

returned the cashier's check, but Biancalana returned the cashier's check to T.D. and demanded the deed. After T.D. refused, Biancalana filed the present action.

T.D. filed an answer admitting that Biancalana had given a cashier's check for $22,000 to the auctioneer and that T.D. had returned those funds and refused to issue a deed to the property, but otherwise denying the allegations in the complaint. As an affirmative defense, T.D. alleged that "[p]rior to the auction attended by plaintiff, a proper and enforceable credit bid was submitted by the foreclosing beneficiary in the sum of $219,105, and accepted by Answering Defendant as trustee. Accordingly, . . . that was a fully effective and completed bid which was higher than the amount bid by plaintiff. As such, the actual high bid at the sale was not plaintiff's, but rather was the foreclosing beneficiary's completed and accepted credit bid."

T.D. moved for summary judgment on the ground that it had properly set aside the foreclosure sale due to a significant procedural irregularity in the statutory foreclosure process coupled with an inadequate sales price. T.D. asserted that prior to the sale "the beneficiary submitted for the auction a credit bid in the amount of $219,105 which was accepted by T.D. Service Company and was intended to be announced as the opening bid at the sale." T.D. said it had mistakenly told the auctioneer that the opening bid was "the delinquency amount (exclusive of foreclosure costs) of $21,894.17 . . . rather than the actual credit bid submitted by the foreclosing beneficiary. The lesser figure was likewise mistakenly announced at the sale." In support, T.D. submitted the declaration of its vice president of operations, Patricia Randall, who declared that "the day before the sale, the beneficiary submitted a specified credit bid in the sum of $219,105. This credit bid was contained within a document entitled in part "Bid Information." The document, a copy of which was attached to Randall's

3

declaration, states: "EMC Specified Bid: $219,105.00." The bid of $21,894.17 that T.D. conveyed to the auctioneer does not appear on this document, but near the bottom of the document appear amounts of $21,010.59 for interest, $14.09 for escrow advance, $724.74 for late fees, and $144.75 for "recoverable balance." When added together, these amounts equal $21,894.17.

According to Randall, T.D. then prepared a document entitled "Bid Amount Verification" that mistakenly listed the amount of the opening bid as $21,894.17. This document, a copy of which was also attached to Randall's declaration, instructed the auctioneer to submit only the "specified bid" of $21,894.17 and not to make any further bids. Based upon this document, the auctioneer announced an opening bid of $21,894.17. T.D. discovered its error later that day, after the sale had been completed but before it had issued a deed.

Relying upon *6 Angels, Inc. v. Stuart-Wright Mortgage, Inc.* (2001) 85 Cal.App.4th 1279 (*6 Angels*), the superior court initially denied T.D.'s motion for summary judgment, ruling that T.D.'s mistake, "which resulted in the incorrect amount being credit bid at the foreclosure action[,] was outside the statutory foreclosure process as outlined in the California Civil Code." The court also said "[t]here was no information in the Court's file about what the property in question was actually worth in the declining real estate market."

T.D. filed a motion for reconsideration after the Third District Court of Appeal decided *Millennium Rock Mortgage, Inc. v. T.D. Service Co.* (2009) 179 Cal.App.4th 804 (*Millennium Rock*), claiming that the decision represented a significant change in the law. The trial court granted T.D.'s motion for reconsideration and, following a hearing, granted summary judgment in favor of T.D. Biancalana appealed.

4

The Court of Appeal reversed, holding that T.D.'s error was not a procedural irregularity in the statutory foreclosure process and that T.D. therefore had no discretionary authority to void the foreclosure sale.  We granted T.D.'s petition for review and now reverse the judgment of the Court of Appeal.

## II.

"On appeal after a motion for summary judgment has been granted, we review the record de novo, considering all the evidence set forth in the moving and opposition papers except that to which objections have been made and sustained. [Citation.]" (*Guz v. Bechtel National, Inc.* (2000) 24 Cal.4th 317, 334.)  A motion for summary judgment is properly granted "if all the papers submitted show that there is no triable issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." (Code Civ. Proc., § 437c, subd. (c).)

There are three parties in the typical deed of trust:  the trustor (debtor), the beneficiary (lender), and the trustee. (4 Witkin, Summary of Cal. Law (10th ed. 2005) Security Transactions in Real Property, § 5, p. 795.)  The trustee holds a power of sale.  If the debtor defaults on the loan, the beneficiary may demand that the trustee conduct a nonjudicial foreclosure sale. (4 Miller & Starr, Cal. Real Estate (3d ed.) Deeds of Trust, ch. 10, § 10:181, p. 552.)  The trustee, or anyone the trustee appoints, may serve as the auctioneer.  (Bernhardt, Cal. Mortgages, Deeds of Trust, and Foreclosure Litigation (Cont.Ed.Bar 4th ed. 2012), § 2.74, p. 118; Miller & Starr, *supra*, § 10:202, p. 643.)

Civil Code sections 2924 through 2924k (further undesignated statutory references are to the Civil Code) govern nonjudicial foreclosure sales pursuant to a power of sale contained in a deed of trust.  "The purposes of this comprehensive scheme are threefold:  (1) to provide the creditor/beneficiary with a quick, inexpensive and efficient remedy against a defaulting debtor/trustor; (2) to protect

5

the debtor/trustor from wrongful loss of the property; and (3) to ensure that a properly conducted sale is final between the parties and conclusive as to a bona fide purchaser. [Citation.]" (*Moeller v. Lien* (1994) 25 Cal.App.4th 822, 830 (*Moeller*).) "[T]he statutory scheme also evidences an intent that a properly conducted sale be a final adjudication of the rights of the creditor and debtor [citations] and the sanctity of title of a bona fide purchaser be protected." (*Id.* at p. 832.) "The trustee at a foreclosure sale, moreover, has a duty to conduct the sale fairly and openly, and to secure the best price for the trustor's benefit." (*Bank of Seoul & Trust Co. v. Marcione* (1988) 198 Cal.App.3d 113, 118 (*Bank of Seoul*); *Residential Capital v. Cal-Western Reconveyance Corp.* (2003) 108 Cal.App.4th 807, 825 ["The nature of this duty of a foreclosing trustee is to ensure the sale is fairly conducted, according to proper procedures, to achieve the highest possible price."]; *Baron v. Colonial Mortgage Service Co.* (1980) 111 Cal.App.3d 316, 322 ["a trustee's duty at a foreclosure sale is to obtain the highest possible price for the property consonant with the protection and preservation of the trustor/debtor's interest"].)

"The purchaser at a foreclosure sale takes title by a trustee's deed. If the trustee's deed recites that all statutory notice requirements and procedures required by law for the conduct of the foreclosure have been satisfied, a rebuttable presumption arises that the sale has been conducted regularly and properly; this presumption is conclusive as to a bona fide purchaser. [Citations.]" (*Moeller*, *supra*, 25 Cal.App.4th at p. 831.) But "the conclusive presumption does not apply until a trustee's deed is delivered. Thus, if there is a defect in the procedure which is discovered after the bid is accepted, but prior to delivery of the trustee's deed, the trustee may abort a sale to a bona fide purchaser, return the purchase price and restart the foreclosure process. [Citations.]" (*Id*. at p. 832.)

6

In the present case, the trustee discovered its error before it delivered the deed, so the conclusive presumption does not apply. In this context, ample cases have stated the applicable rule as follows: " ' "gross inadequacy of price coupled with even slight unfairness or irregularity is a sufficient basis for setting the sale aside." ' (*Bank of Seoul*[, *supra*,] 198 Cal.App.3d 113, 119, . . . quoting *Whitman v. Transtate Title Co.* (1985) 165 Cal.App.3d 312, 323; see *Little v. CFS Service Corp.* (1987) 188 Cal.App.3d 1354, 1361 [after sale but prior to deed delivery, trustee discovered defect in giving notice; sale held voidable by the trustee]; *Angell v. Superior Court* (1999) 73 Cal.App.4th 691, 702 [material mistake regarding the reinstatement amount discovered after acceptance of bid but prior to delivery of deed justified trustee's refusal to complete the transaction].)" (*Millennium Rock*, *supra,* 179 Cal.App.4th at p. 810, italics omitted.) We apply this rule to the facts before us.

## A.

Biancalana argues that T.D. failed to demonstrate gross inadequacy of price because there was no evidence of what the property was worth in the declining real estate market. But gross inadequacy of price is shown here by the fact that Biancalana's accepted bid of $21,896 was less than 10 percent of the opening bid of $219,105 that the beneficiary had submitted to the trustee. Had T.D. not conveyed the mistaken bid to the auctioneer, the property would have sold for at least $219,105. In *Millennium Rock*, the Court of Appeal found gross inadequacy of price where "Millennium's accepted bid of $51,500 constituted only one-seventh of the opening credit bid that should have been announced for the Arcola Avenue property." (*Millennium Rock*, *supra*, 179 Cal.App.4th at p. 810.) Here, the disparity between the opening bid communicated by the beneficiary to T.D.

7

and the opening bid T.D. mistakenly communicated to the auctioneer was even greater than the disparity in *Millennium Rock*.

**B.**

The dispute in this case focuses on whether the trustee's mistake was part of the foreclosure sale process. T.D. argues that "the processing of a duly submitted credit bid pursuant to Civil Code § 2924h is a key function of the trustee within the statutory framework defining its duties. Accordingly where an error is made by the trustee in announcing that credit bid, the trustee should be entitled to rescind and re-hold the sale if a grossly inadequate price resulted from that error and no trustee's deed has been delivered." Biancalana counters that T.D.'s mistake "occurred before the public auction began" and therefore does not constitute a procedural error in the statutory foreclosure process. "To allow a trustee after the close of a public auction that proceeded according to statute to claim a mistake that was invisible to the public and attempt to back out of the sale," Biancalana argues, "is to open the door to manipulation and fraud in a process that the Legislature created to be structured, clear, open and reliable." As explained below, we think T.D. has the better of this argument.

As this court recognized more than a century ago, "[i]t is a rule in equity that the beneficiary under a deed of trust may become the purchaser at a sale by the trustee . . . and the trustee may himself make the bid at the instance of the beneficiary, without impairing the validity of the sale." (*Felton v. Le Breton* (1891) 92 Cal. 457, 467 (*Felton*).) The statutory scheme governing nonjudicial foreclosure sales contemplates the submission of a credit bid by the beneficiary. Section 2924h, subdivision (b) provides that whereas other bidders must bring cash to the auction, "[t]he present beneficiary of the deed of trust under foreclosure shall have the right to offset his or her bid or bids only to the extent of

8

the total amount due the beneficiary including the trustee's fees and expenses." In other words, the lender "is entitled to make a credit bid up to the amount of the outstanding indebtedness." (*Alliance Mortgage Co. v. Rothwell* (1995) 10 Cal.4th 1226, 1238.) We have explained that "[t]he purpose of this entitlement is to avoid the inefficiency of requiring the lender to tender cash which would only be immediately returned to it. [Citation.] A 'full credit bid' is a bid 'in an amount equal to the unpaid principal and interest of the mortgage debt, together with the costs, fees and other expenses of the foreclosure.' [Citation.]" (*Ibid.*; *Witter v. Bank of Milpitas* (1928) 204 Cal. 570, 580 [the beneficiary is not required to "carry to the sale a sack of cash, make its bid, obtain its deed, pay in cash, and then demand back the cash and credit it as a payment on the notes"].)

Although T.D. says a credit bid becomes "effective and irrevocable . . . pursuant to Civil Code § 2924h(a)" once it "is submitted by the beneficiary for announcement by the auctioneer acting for the trustee," we need not decide whether that is the case. It is enough to observe that because of T.D.'s error, the opening bid actually given at the auction was mistaken. The opening bid at the sale did not accurately reflect the $219,105 bid that EMC communicated to T.D. pursuant to the authority of a beneficiary to submit a credit bid via the trustee. (See § 2924h, subd. (b); *Felton*, *supra*, 92 Cal. at p. 467.) Thus, even though T.D.'s transcription error occurred before the start of the sale, the error resulted in the auctioneer announcing a mistaken opening bid on behalf of the beneficiary at the sale itself. This qualifies as an irregularity occurring *within* the statutory foreclosure sale process.

Relying on *6 Angels*, *supra*, 85 Cal.App.4th 1279, Biancalana says it is dispositive that T.D.'s error occurred before the public auction began. In *6 Angels*, the beneficiary submitted an incorrect opening bid to the trustee before the

9

sale. The beneficiary had intended to submit a bid of $100,000, but due to a clerical error, the beneficiary instead submitted a bid of $10,000. At the sale, the auctioneer made an opening bid of $10,000 on behalf of the beneficiary as instructed, and 6 Angels submitted the only other bid, of $10,001. The Court of Appeal observed: " 'As a general rule, there is a common law *rebuttable* presumption that a foreclosure sale has been conducted regularly and fairly.' [Citations.] Accordingly, '[a] successful challenge to the sale requires evidence of a failure to comply with the procedural requirements for the foreclosure sale that caused prejudice to the person attacking the sale.' [Citation.]" (*Id*. at p. 1284.) The court stated that "the only potential procedural irregularity identified by appellants is the clerical error that [the beneficiary] allegedly made when instructing [the trustee] on the opening bid. However, this error, which was wholly under [the beneficiary]'s control and arose solely from [the beneficiary]'s own negligence, falls outside the procedural requirements for foreclosure sales described in the statutory scheme, and . . . is 'dehors the sale proceedings.' [Citation.]" (*Id*. at p. 1285; see Black's Law Dict. (9th ed. 2009) p. 490, col. 1 [defining "dehors" to mean "[o]utside" or "beyond the scope of"].)

Biancalana contends that T.D.'s mistake in the present case "was outside the statutory process, just like the mistake that occurred in *6 Angels*." But *6 Angels* focused on who made the mistake, not on when the mistake was made. The court explained that the error in that case was outside of the sale proceedings because the error "was wholly under [the beneficiary]'s control and arose solely from [the beneficiary]'s own negligence." (*6 Angels*, *supra*, 85 Cal.App.4th at p. 1285.) Here, by contrast, the trustee made the mistake, and the beneficiary was blameless.

10

Nor does *Crofoot v. Tarman* (1957) 147 Cal.App.2d 443 support Biancalana's position. Tarman had purchased from Crofoot a promissory note payable to Black Rock Mineral Company (Black Rock) that was secured by a second deed of trust encumbering property owned by Crofoot. Because the note was in default, a trustee's sale was scheduled. Before the sale, Black Rock's attorney spoke to Tarman's secretary, who inadvertently and mistakenly told the attorney that the sale had been postponed. The sale was conducted on the date scheduled, but neither Black Rock nor Crofoot appeared, and the property was sold to Tarman for $10,000. Tarman later testified that the property was worth between $40,000 and $50,000. The Court of Appeal held that it had no authority, on appellate review, to void the trustee's sale because there had been no irregularity in the sale: "There is nothing in the record to the effect that anything done or left undone by the trustee prevented the public from attending at the sale or in anywise discouraged bidding. Therefore, the trustee's sale cannot be set aside by reason of irregularities plus inadequacy of price. Crofoot's contention that the sale should be set aside is in reality based upon matters dehors the sale proceedings, that is, upon a claim of fraud or mistake inhering in the misinformation as to the date of sale." (*Id*. at p. 447.) At the same time, *Crofoot* said the trial court had discretion to void the sale if it believed such a result to be warranted: "The most that can be said concerning the fact and the effect of the misinformation as to the date of sale, conveyed to the attorney for Black Rock and by him to Crofoot, is that the facts would have supported a determination by the trial court that the sale ought to be set aside but that such a holding was not compelled." (*Id.* at p. 448.) Thus, far from holding that a trustee's sale may not be set aside based upon a mistake occurring prior to the sale, *Crofoot* held that the trial court in that case, though authorized to void the sale, was not compelled to do

11

so. If anything, *Crofoot* suggests that T.D. had the discretionary authority to void the sale here.

The present case is better analogized to *Millennium Rock*, *supra*, 179 Cal.App.4th 804, where a mistake by the auctioneer justified the trustee's decision to void the sale. *Millennium Rock* concerned a nonjudicial foreclosure sale of real property on Arcola Avenue in Sacramento. Before the sale, the trustee submitted to the auctioneer the beneficiary's credit bid in the amount of $382,544.46. The Arcola Avenue property was one of several properties to be sold on the same date. In conducting the sales scheduled for that date, the auctioneer used a script that identified each property by a trustee sale number, the legal description of the property, and the property address. The auctioneer mistakenly included the address of the property on Arcola Avenue in the script for a different property, on 13th Avenue, that was also being sold at the auction. The auctioneer thus called out the trustee sale number and legal description for the 13th Avenue property, but mistakenly included the address of the Arcola Avenue property, and then announced the opening bid for the 13th Avenue property of $51,447.50. Millennium Rock Mortgage, Inc. (Millennium) submitted the only other bid, of $51,500, and was declared the highest bidder. Millennium tendered a cashier's check and demanded a receipt. The auctioneer no longer had his script with him and wrote a receipt using the trustee sale number for the Arcola Avenue property that Millennium provided. Upon discovering the mistake later that day, the trustee advised Millennium that the sale was invalid and refused to issue a deed to the Arcola Avenue property. (See *id.* at pp. 807–808 & fn. 1.)

The Court of Appeal held that the auctioneer's error was an irregularity that justified voiding the sale. Unlike the error in *6 Angels* resulting from the beneficiary's own negligence, "the mistake by the auctioneer in this case was of a

12

different variety." (*Millennium Rock*, *supra*, 179 Cal.App.4th at p. 811.) The auctioneer's error "went to the heart of the sale":  "there was inherent inconsistency in the auctioneer's description of the property being offered for sale. The auctioneer called out the legal description and credit bid applicable to one property, while announcing the street address of a different property.  This created a fatal ambiguity in determining which property was being auctioned." (*Ibid.*, fn. omitted.)

Although T.D.'s mistake in the present case did not create an ambiguity as to which property was being sold, the error — like the error by the trustee's agent in *Millenium Rock* — was an irregularity in the trustee's discharge of its statutory "duty to conduct the sale fairly and openly, and to secure the best price for the trustor's benefit." (*Bank of Seoul*, *supra*, 198 Cal.App.3d at p. 118; see *ibid.* [trustee's duty is to " 'obtain the highest possible price' " in order to " 'satisfy the indebtedness owed the beneficiary and recover for the trustor as much equity as possible' "].)  T.D.'s mistake "went to the heart of the sale" (*Millennium Rock*, *supra*, 179 Cal.App.4th at p. 811) because it resulted in the announcement at the sale of an opening credit bid that set an erroneously low floor for subsequent bidding.  (See also *Bank of Seoul*, at pp. 118–119 [holding that auctioneer's failure at the auction to acknowledge or clarify Bank of Seoul's statement "we bid" violated the duties of a trustee and auctioneer under § 2924h].)

Biancalana argues that T.D.'s error should be imputed to the beneficiary because the trustee acted as an agent for the beneficiary.  But the trustee under a deed of trust is an agent of the beneficiary only in a limited sense.  Such a trustee "has neither the powers nor the obligations of a strict trustee; rather, he serves as a kind of common agent for the trustor and the beneficiary.  [Citations.]  His agency is a passive one, for the limited purpose of conducting a sale in the event of the

13

trustor's default or reconveying the property upon satisfaction of the debt. [Citations.]" (*Hatch v. Collins* (1990) 225 Cal.App.3d 1104, 1111; see *Vournas v. Fidelity Nat. Title Ins. Co.* (1999) 73 Cal.App.4th 668, 677.) " 'The scope and nature of the trustee's duties are exclusively defined by the deed of trust and the governing statutes. No other common law duties exist.' " (*Pro Value Properties, Inc. v. Quality Loan Service Corp.* (2009) 170 Cal.App.4th 579, 583.) The trustee conducting a public sale has the duty "to protect the rights of all persons interested and to obtain a reasonable price." (*Brown v. Busch* (1957) 152 Cal.App.2d 200, 204; *Block v. Tobin* (1975) 45 Cal.App.3d 214, 221.)

Biancalana relies upon the statement in *Scott v. Security Title Ins. & Guar. Co.* (1937) 9 Cal.2d 606 that " '[t]rustees named in deeds of trust, or in mortgages, with powers of sale are, for certain purposes, agents of the mortgagors or trustors.' " (*Id.* at p. 611.) But that case addressed the trustee's duty to " 'act in good faith' " and " 'not be guilty of fraud or deceit.' " (*Ibid.*) *Scott* held that no violation of that duty occurred in that case because there was "no intimation that the trustee acted in bad faith or was guilty of any fraud or deceit." (*Ibid.*) The same is true here.

Biancalana also relies upon *Munger v. Moore* (1970) 11 Cal.App.3d 1 to contend that T.D.'s error should be imputed to the beneficiary. But there was evidence in *Munger* that the beneficiary had instructed the trustee to proceed with a trustee's sale despite the fact that the borrower had tendered the amount needed to cure the default. Noting that the borrower brought its action for wrongfully exercising the power of sale in the trust deed against the beneficiary as well as the trustee, the Court of Appeal held: "Since the trustee acts as an agent for the beneficiary, there can be no question that liability for damages may be imposed against the beneficiary where, as here, the trustee in exercising the power of sale is

14

acting as the agent of the beneficiary. [Citations.] In the instant case the trial court made unchallenged findings that the trustee . . . was acting as the agent for and pursuant to the instructions and directions of . . . the beneficiaries of the subject deed of trust." (*Id*. at p. 8.) Similarly, in *South Bay Building Enterprises, Inc. v. Riviera Lend-Lease, Inc.* (1999) 72 Cal.App.4th 1111, the Court of Appeal relied on testimony that the beneficiary had "directed the trustee" not to collect the full amount of a bid placed by the beneficiary in concluding that "the trustee acted as [the beneficiary]'s agent" and that "[t]he trustee's failure to perform its statutory obligation can be imputed to [the beneficiary] based upon the agent-principal relationship." (*Id.* at p. 1124.) Here, by contrast, the trustee did not act pursuant to the beneficiary's instructions; T.D. deviated from those instructions. Because the error was the trustee's alone, it cannot be imputed to the beneficiary.

In sum, T.D.'s mistake led to the announcement of an erroneous opening bid at the auction. This was an irregularity in the sale process. Further, the mistaken bid, which was less than 10 percent of the credit bid actually submitted by the beneficiary, resulted in a grossly inadequate purchase price. T.D. caught the error before the issuing the deed, and T.D. has acknowledged and documented its error. Under these circumstances, the trustee was authorized to void the sale.

## C.

Biancalana's public policy arguments do not dissuade us from our conclusion. He contends that "[t]o allow a trustee after the close of a public auction that proceeded according to statute to claim a mistake that was invisible to the public and attempt to back out of the sale is to open the door to manipulation and fraud in a process that the Legislature created to be structured, clear, open and reliable." But Biancalana acknowledges that no collusion or fraud occurred in this case and that T.D. simply made a mistake. It may be true that a buyer will not

15

always readily accept a trustee's declaration of a "mistake" as a basis for voiding the sale. But a trustee cannot set aside a sale simply because the beneficiary is unhappy with the purchase price. In addition to an irregularity in the sale process, the price must be grossly inadequate before the trustee has discretion to void the sale. In the unusual situations where there is gross inadequacy of price, as in this case and in *Millenium Rock*, it seems reasonable to believe that the irregularity in the sale was more likely the product of a genuine mistake rather than fraud or price manipulation.

Biancalana further contends that permitting the trustee to void the sale under these circumstances would "encourage litigation." Although the rule Biancalana urges may serve to forestall lawsuits like this one filed by a purchaser against the trustee, it would not forestall lawsuits by the beneficiary against the trustee. Indeed, if the trustee has no discretion to void the sale in circumstances like those here, it seems all but certain that the beneficiary will seek a remedy from the trustee. We do not think Biancalana's rule can be preferred on the ground that it would reduce litigation.

Allowing the trustee to void the sale in the present circumstances may create some uncertainty for bidders and may detract from the interest in finality. But it cannot be said that a bidder in Biancalana's position is prejudiced in any meaningful way by the trustee's mistake and prompt rescission of the sale. As the Court of Appeal recognized in *Residential Capital, LLC v. Cal-Western Reconveyance Corp.*, *supra*, 108 Cal.App.4th 807, 822, if a procedural defect in the sale "is detected before the trustee's deed is issued, the successful foreclosure sale bidder has not been seriously prejudiced and its remedy is limited to the return of the sale price plus interest." If the sale were not set aside, the winning bidder would unquestionably reap a windfall. Voiding the sale and then conducting a

16

proper sale would put the bidder in no worse position than if the trustee had made no mistake in the first place.  Moreover, although finality is important, the purpose of the nonjudicial foreclosure process is not to promote finality at all costs.  The interest in finality must be considered in light of the sale process's additional objective of "secur[ing] the best price for the trustor's benefit."  (*Bank of Seoul*, *supra*, 198 Cal.App.3d at p. 118.)  Overall, the statutory foreclosure process aims "to ensure that a *properly* conducted sale is final between the parties."  (*Moeller*, *supra*, 25 Cal.App.4th at p. 830, italics added.)  This purpose is not served by enforcing the finality of a sale that was conducted improperly.

Of course, we do not condone negligence by the trustee.  Our holding is premised on the trustee discovering its mistake before it issues the deed.  After the deed is issued, a bona fide purchaser is entitled to conclusively presume that the sale was conducted regularly and properly.  (*Moeller*, *supra*, 25 Cal.App.4th at pp. 831–832.)  The trustee thus has an incentive to exercise diligence in promptly reviewing the sale and identifying any irregularity before issuing the deed.  In the present case, the trustee discovered its error within two days of the auction, and the error resulted in a grossly inadequate purchase price.  Under such circumstances, we do not think the balance of public policy objectives weighs in favor of allowing the buyer to enjoy a substantial windfall while leaving the beneficiary to collect whatever remedy it can from the trustee.  The more efficient course is to permit the trustee to quickly correct its mistake and hold a proper sale.

### CONCLUSION

For the reasons above, the judgment of the Court of Appeal is reversed and the matter is remanded for further proceedings consistent with our opinion.


LIU, J.


WE CONCUR:  CANTIL-SAKAUYE, C. J.
                    KENNARD, J.
                    WERDEGAR, J.
                    CHIN, J.
                    CORRIGAN, J.
                    MANELLA, J.*

_____

    *  Associate Justice of the Court of Appeal, Second Appellate District, Division Four, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.

*See next page for addresses and telephone numbers for counsel who argued in Supreme Court.*

**Name of Opinion** Biancalana v. T.D. Service Company

_____

**Unpublished Opinion**
**Original Appeal**
**Original Proceeding**
**Review Granted** XXX 200 Cal.App.4th 527
**Rehearing Granted**

_____

**Opinion No.** S198562
**Date Filed:** May 16, 2013

_____

**Court:** Superior
**County:** Santa Cruz
**Judge:** John Jeffrey Almquist

_____

**Counsel:**

Dawson, Pasafuime, Bowden & Martinez and Kathleen Morgan-Martinez for Plaintiff and Appellant.

Flynn/Williams and Brian C. Pedersen for P&K Property, LLC, as Amicus Curiae on behalf of Plaintiff and Appellant.

The Dreyfuss Firm and Lawrence J. Dreyfuss for Defendant and Respondent.

Kirby & McGuinn, Martin T. McGuinn and Dean T. Kirby, Jr. for United Trustees Association as Amicus Curiae on behalf of Defendant and Respondent.

**Counsel who argued in Supreme Court (not intended for publication with opinion):**

Kathleen Morgan-Martinez
Dawson, Pasafuime, Bowden & Martinez
4665 Scotts Valley Drive
Scotts Valley, CA  95066
(831) 438-1221

Lawrence J. Dreyfuss
The Dreyfuss Firm
7700 Irvine Center Drive, Suite 710
Irvine, CA  92618
(949) 727-0977