Filed 7/10/13  Biancalana v. T.D. Service CA6
Opinion following transfer from Supreme Court
**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SIXTH APPELLATE DISTRICT

| | |
|---|---|
| DAVID BIANCALANA, <br><br> Plaintiff and Appellant, <br><br> v. <br><br> T.D. SERVICE COMPANY, <br><br> Defendant and Respondent. | H035400 <br> (Santa Cruz County <br> Super. Ct. No. CV162804) |

Having previously granted review, the California Supreme Court filed its decision in this case on May 16, 2013.  (*Biancalana v. T.D. Service Co.* (2013) 56 Cal.4th 807 (*Biancalana*).)  The Supreme Court reversed the judgment previously rendered by this court and transferred the matter to us for further proceedings consistent with the views expressed in its opinion.

## I.  FACTUAL AND PROCEDURAL BACKGROUND

### A.  *Relevant trial court proceedings*

As explained in the Supreme Court's decision:  "Plaintiff David Biancalana filed an action to quiet title to a parcel of real property located at 434 Winchester Drive in Watsonville, California, alleging that he owned the property because he was the highest bidder at a trustee's sale that occurred on September 10, 2008.  According to Biancalana's complaint, EMC Mortgage Corporation (EMC) was the beneficiary of a loan secured by a deed of trust on the property, and T.D. Service Company (T.D.) was the trustee.  After the loan went into default, T.D. issued a notice of trustee's sale.  A

copy of the notice of sale was attached to the complaint. It stated that the property would be sold at public auction to the highest bidder at the entrance to the county offices in Santa Cruz at 10:00 a.m. on September 10, 2008. The notice said that 'the total amount of the unpaid balance of the obligation secured by the above described Deed of Trust and estimated costs, expenses, and advances is $435,494.74,' but added: 'It is possible that at the time of sale the opening bid may be less than the total indebtedness due.' The notice included a telephone number that could be called the day before the sale to learn 'the expected opening bid,' if available.

"The complaint alleged that on the day before the sale, Biancalana called the telephone number listed on the notice of sale and learned that the opening bid on the property would be $21,894.17. After researching the property, Biancalana called the trustee again and confirmed the amount of the opening bid. Biancalana then obtained a cashier's check for $22,000 and attended the auction the following day.

"On the morning of the sale, 'the auctioneer for the Defendant Trustee, made at least two calls to Defendant Trustee and spoke with two different Trustee agents to verify the opening bid of $21,894.17.' When the auction began, the auctioneer stated he had 'been authorized to place an opening bid, on behalf of the beneficiary, in the amount of $21,894.17.' Biancalana then bid $21,896. There were no further bids, and the auctioneer announced that 'this property is sold to Mr. Biancalana for $21,896.00.' Biancalana gave the auctioneer his cashier's check for $22,000.

"Two days later, T.D. telephoned Biancalana and said the sale was void because T.D. 'did not offer the Property for a high enough bid amount.' T.D. returned the cashier's check, but Biancalana returned the cashier's check to T.D. and demanded the deed. After T.D. refused, Biancalana filed the present action.

"T.D. filed an answer admitting that Biancalana had given a cashier's check for $22,000 to the auctioneer and that T.D. had returned those funds and refused to issue a deed to the property, but otherwise denying the allegations in the complaint. As an

2

affirmative defense, T.D. alleged that '[p]rior to the auction attended by plaintiff, a proper and enforceable credit bid was submitted by the foreclosing beneficiary in the sum of $219,105, and accepted by Answering Defendant as trustee. Accordingly, . . . that was a fully effective and completed bid which was higher than the amount bid by plaintiff. As such, the actual high bid at the sale was not plaintiff's, but rather was the foreclosing beneficiary's completed and accepted credit bid.'

"T.D. moved for summary judgment on the ground that it had properly set aside the foreclosure sale due to a significant procedural irregularity in the statutory foreclosure process coupled with an inadequate sales price. T.D. asserted that prior to the sale 'the beneficiary submitted for the auction a credit bid in the amount of $219,105 which was accepted by T.D. Service Company and was intended to be announced as the opening bid at the sale.' T.D. said it had mistakenly told the auctioneer that the opening bid was 'the delinquency amount (exclusive of foreclosure costs) of $21,894.17 . . . rather than the actual credit bid submitted by the foreclosing beneficiary. The lesser figure was likewise mistakenly announced at the sale.' In support, T.D. submitted the declaration of its vice-president of operations, Patricia Randall, who declared that 'the day before the sale, the beneficiary submitted a specified credit bid in the sum of $219,105.' This credit bid was contained within a document entitled in part 'Bid Information.' The document, a copy of which was attached to Randall's declaration, states: 'EMC Specified Bid: $219,105.00.' The bid of $21,894.17 that T.D. conveyed to the auctioneer does not appear on this document, but near the bottom of the document appear amounts of $21,010.59 for interest, $14.09 for escrow advance, $724.74 for late fees, and $144.75 for 'recoverable balance.' When added together, these amounts equal $21,894.17.

"According to Randall, T.D. then prepared a document entitled 'Bid Amount Verification' that mistakenly listed the amount of the opening bid as $21,894.17. This document, a copy of which was also attached to Randall's declaration, instructed the auctioneer to submit only the 'specified bid' of $21,894.17 and not to make any further

3

bids.  Based upon this document, the auctioneer announced an opening bid of $21,894.17. T.D. discovered its error later that day, after the sale had been completed but before it had issued a deed." (*Biancalana*, *supra*, 56 Cal.4th at pp. 811-812.)

The trial court granted T.D's motion for summary judgment on Biancalana's complaint.  The court determined that T.D.'s error was a procedural irregularity within the statutory foreclosure process and that T.D. was thus entitled to set aside the foreclosure sale.

B.    *Our prior appellate decision*

Biancalana appealed the judgment to this court.  We "reversed, holding that T.D.'s error was not a procedural irregularity in the statutory foreclosure process and that T.D. therefore had no discretionary authority to void the foreclosure sale." (*Biancalana*, *supra*, 56 Cal.4th at p. 813.)

C.    *The Supreme Court's opinion*

On T.D.'s petition, the Supreme Court granted review.  (*Biancalana*, *supra*, 56 Cal.4th at p. 813.)  The Supreme Court first reviewed the law governing nonjudicial foreclosure sales.  (*Id.* at pp. 813-814.)  The court noted that delivery of the trustee's deed to a bona fide purchaser gives rise to a conclusive presumption that the foreclosure sale has been conducted regularly and properly, but where a defect in the procedure is discovered prior to delivery of the deed, the trustee is empowered to void the sale, return the purchase price to a bona fide purchaser and recommence the foreclosure process. (*Ibid*.)  Since T.D. discovered the error in its bid before delivering the deed, the conclusive presumption did not apply and T.D. was entitled to set aside the sale due to the gross inadequacy of price conveyed by Biancalana.  The court also held that T.D.'s "transcription error" qualified as an "irregularity occurring *within* the statutory foreclosure sale process," since it caused the auctioneer to announce a mistaken opening bid from the beneficiary at the auction. (*Id*. at p. 816.)  Finally, the court explained that T.D.'s error could not be imputed to the beneficiary since a "trustee under a deed of trust

4

is an agent of the beneficiary only in a limited sense." (*Id*. at p. 819.)  Because T.D. "did not act pursuant to the beneficiary's instructions[,] . . . the error was [T.D.]'s alone." (*Id.* at p. 820.)  Accordingly, T.D. was entitled to entry of summary judgment in its favor.

## II.     DISPOSITION

Consistent with the Supreme Court's directions, we affirm the judgment.  The parties shall bear their own costs on appeal.

_____
Premo, J.

WE CONCUR:

_____
Rushing, P.J.

_____
Elia, J.

5