[No. 1360.]

## J. B. DAZET AND F. S. LACROUTS, RESPONDENTS, *v.* JAMES LANDRY, NAPOLEON LANDRY, ANGELLE LANDRY AND DENNIS KEHOE, APPELLANTS.

JUDICIAL SALE—FAILURE TO PAY BID.—In a suit for partition, the sheriff was ordered to sell property at public auction for the highest cash price, and as property is sold under execution. At the sale the property was struck off to defendant J. as the highest bidder, but on his failure to pay the amount of his bid, the sheriff becoming satisfied that the bid was not made in good faith, re-advertised the property, and it was bid in by defendant N. who asked for and was granted fifteen minutes in which to pay his bid, and was told at the time that it was not a sale unless the money was paid down. The sheriff waited thirty minutes, and failing to receive the money, sold the property to L. *Held,* that as the property was ordered to be sold for cash, and as property is sold under execution, the sheriff acted rightly in re-selling on failure of J. and N. to pay the amounts of their bids in cash, and that the sale to L. should be confirmed.

IDEM—NEXT HIGHEST BIDDER.—If the highest bidder at a sheriff's sale fails to pay the amount of his bid, the next highest bidder is not bound by his bid.

IDEM—INADEQUACY OF PRICE IN ABSENCE OF FRAUD.—A sheriff's sale of property will not be set aside for inadequacy of price, in the absence of fraud.

APPEAL from the District Court of the State of Nevada, Lyon county.

*Richard Rising,* District Judge.

The facts sufficiently appear in the opinion.

*Robert M. Clarke,* for Appellants.

I. The proceedings of the sheriff were not final until confirmed by the court. (Gen. Stat. 3301, 3302, 3320, 3321, 3341; Freeman on Coten. 545; *In re Bost,* 3 Jones Eq. 483.)

II. After selling the property to Landry, the sheriff could not re-offer it without giving notice again. (Gen. Stat. 3311, 3248.)

III. A sale for a grossly inadequate price should be vacated. (Freeman on Coten. 544; *Allen's Estate,* 11 Phila. 48.)

*W. E. F. Deal,* for Respondents.

I. The sheriff had the right to re-sell the property without further notice, on failure of the bidder to make good his bid.

(Freeman on Executions, Secs. 300, 301; *Askew* v. *Ebberts*, 22 Cal. 265; *Croacher* v. *Oesting*, 9 N. E. Rep. 533; *People* v. *Hays*, 5 Cal. 66; *Maher* v. *Insurance Co.*, 19 N. E. Rep. 305.)

II.  Even if there had been no proper notice the sale would have been valid after confirmation by the court. (*Bank* v. *Huntoon*, 11 Pac. Rep. 375; *Smith* v. *Randall*, 6 Cal. 47; *Simson* v. *Eckstein*, 22 Cal. 590; Freeman on Executions, Sec. 339.)

III.  It was the duty of the sheriff to re-sell immediately on failure of bidder to pay. (*Camden* v. *Mayhew*, 129 U. S. 84; Freeman on Executions, Sec. 300 and authorities cited in note 2; *Isler* v. *Colgrove*, 75 N. C. 341; *Ruckle* v. *Barbour*, 48 Ind. 274; *Michel* v. *Kaiser*, 25 La. Ann. 57; *Isler* v *Andrews*, 66 N. C. 552; *Jones* v. *Null*, 9 Neb. 254; *Humphrey* v. *McGill*, 59 Ga. 649; Rorer on Judicial Sales, Sec. 599; *Sedgwick* v. *Fish*, 1 Hopk. Ch. 594; *Russell* v. *Gibbs*, 5 Cow. 396; *Swope* v. *Ardery*, 5 Ind. 213; *Walworth* v. *Readsboro*, 24 Vt. 252; *Thompson* v. *McNanama*, 2 Disn. 213; *Roberts* v. *Westbrook*, 1 Cold. 115; *Illingworth* v. *Miltenberger*, 11 Mo. 80; *Williamson* v. *Berry*, 8 How. 544.)

IV.  There was no sale to Landry. (Rorer on Judicial Sales, Sec. 91; *Veazie* v. *Williams*, 8 How. 153; 2 Kent Com. 12th ed. 138.)

V.  All bids at public sale are subject to the right of the bidder to withdraw it at any time before the property is knocked off to him. (*Fisher* v. *Seltzer*, 62 Am. Dec. 335; *Blossom* v. *Railroad Co.*, 3 Wall. 206.)

VI.  Every bid made by Landry was fraudulent, and no one could be bound by any bid made over him. (2 Kent Com. 12th ed. 538; *Veazie* v. *Williams*, 8 How. 153; Freeman on Executions, 298 and note 4; Freeman on Coten. 2d ed. Sec. 544.)

VII.  Inadequacy of price is not a ground for setting aside a sale. (*Railroad Co.* v. *Creed*, 11 Pac Rep. 772; *Bank* v. *Huntoon*, 35 Kan. 577; *Studebaker* v. *Johnson*, 21 Pac. Rep. 271; *Weaver* v. *Lyon*, 5 At. Rep. 782 and note on 784.)

VIII.  The sheriff acted merely as the organ of the court, and not as a ministerial officer. (Rorer on Judicial Sales, Sec. 46 *et seq.*)

IX.  The decree of confirmation cured all defects. (Rorer on Judicial Sales, Secs. 53, 122, 126–128; *Smith* v. *Simpson*, 60 Pa. St. 169; *McBain* v. *McBain*, 15 Oh. St. 337; *Thompson* v. *Phillips*, 1 Bald. 272; *Kellam* v. *Richards*, 56 Ala. 240; 12 Am.

& Eng. Ency. of Law 219; *Harrison* v. *Harrison*, 1 Md. Ch. 332.)

By the Court, MURPHY, J.:

The respondents and Angelle Landry were the owners of, and tenants in common of a mining claim, situate in the Devil's Gate & Chinatown mining district, at Silver City, Lyon county, Nevada. The plaintiffs commenced an action for the dissolution of the mining copartnership and a sale of the mining property. Defendants James Landry, Napoleon Landry and Dennis Kehoe were made defendants as having some interest in or claim upon said property. The defendants answered, and on the 1st day of December, 1890, the parties, with their attorneys, appeared in court, when it was stipulated and agreed by and between them that, after certain work should be done in the mine, a decree of sale should be entered by the court, as prayed for in the complaint. On the 30th day of December, 1890, the parties again appeared in court, when it was made to appear to the satisfaction of the court, that the work ordered to be done was completed, whereupon a decree of sale and distribution of the proceeds were ordered. Said sale was to be made by the sheriff, at public auction, for the highest cash price, the same as property is sold under execution, after thirty days' notice had been given by publication in a newspaper and posting of notices.

In compliance with the decree the sheriff, after having advertised said property for sale, did on the 16th day of February, 1891, offer the said premises for sale at public auction to the highest and best bidder for cash. James Landry, one of the defendants, bid for said property the sum of eleven thousand dollars, which was the highest bid offered, and the property was struck off to him for that sum; but he did not at said sale or at any time since said sale, pay or offer to pay the amount bid by him, nor any part thereof. Several days after said sale to James Landry the sheriff becoming satisfied that the bid was not made in good faith, re-advertised said property, and on the 30th day of March, 1891, exposed the property for sale for cash, when Napoleon Landry, another of the defendants, bid eight thousand five hundred dollars, which was the highest bid offered, and the property was struck off to him, whereupon Napoleon Landry asked the sheriff for fifteen minutes' time to

get the money to make his bid good. The sheriff granted his request, and at the same time notified Landry that it would not be considered a sale without the money was paid down, and at the same time the sheriff requested the bystanders to remain, as it would not be considered a sale until the money was paid. The sheriff waited thirty minutes. Landry not returning to make his bid good, the property was re-sold by the sheriff to F. S. Lacrouts for the sum of six thousand one hundred dollars, that being the highest sum bid at such sale.

On the 9th day of April, 1891, the time of the hearing for confirmation of said sale, all parties being present in court, Angelle Landry objected to the confirmation of the sale to Lacrouts. After hearing all the testimony offered in favor of and against the confirmation of the sale, the court made an order that Napoleon Landry have ten days thereafter to pay to the sheriff the sum bid by him, to-wit, eight thousand five hundred dollars, and, upon the payment of said sum of money to the sheriff, the sale of the property would be confirmed to him. On the 21st day of April, 1891, the court being in session, and Napoleon Landry not having paid to the sheriff the sum bid by him for the premises, the court stated to the attorney for contestant that if he (the attorney) would give the court any assurance that the property would bring more than six thousand one hundred dollars, the court would set the sale aside and order the property re-sold. The counsel stated to the court that they would give no such assurance, whereupon the court made an order confirming the sale to Lacrouts. From this order the defendant Angelle Landry appeals on the following grounds:

1. " That the sheriff should have reported his proceedings of the sale to James Landry to the court, and James Landry should have been given an opportunity to pay on confirmation of the sale to him." The answer to this objection is that the order of the court was that the property should be sold for cash. Section 3311, Gen. Stat. Nev., reads: " The sale of real property made by referee under this chapter shall be made by public auction to the highest bidder, upon notice published in the manner required for the sale of real property on execution. The notice shall state terms of sale." Section 3312 requires that in the order of sale the court shall direct the terms of credit which may be allowed for the purchase money. Section

3318 provides that in all cases of sale of property, the terms shall be made known at the time. Section 3334 provides that, instead of ordering a sale of a mining claim for cash, the court may direct the referee to divide the claim as provided by statute. The court complied strictly with the provisions of the statute, and ordered the premises sold for cash, which meant that the moment that the bid was accepted, the bidder should be prepared then and there to make his bid good, by depositing the sum bid in the hands of the sheriff.

It would be inconsistent to say that a sale for cash meant a sale on credit for thirty days or until the confirmation of the sale by the court. If such had been the intention, the court would have said so in its decree, and provided for the purchaser depositing a certain per cent. of the purchase money, or the bond that should be given to secure the payment of the money, upon the confirmation of the sale. A sale for cash is a sale for the money in hand. (*Steward* v. *Scudder*, 24 N. J. Law, 98; *Bliss* v. *Arnold*, 8 Vt. 255.) Cash is money at command; ready money. (Worcester; Whart. Law Dict.) The sheriff was not required, under the order of sale, to report his proceedings to the court before re-advertising and re-sale. Section 3248, Gen. Stat., provides that, if a purchaser refuses to pay the amount bid by him for property struck off to him at a sale under execution, the officer may again sell the property to the highest bidder, after again giving the notice hereinbefore provided. The order of the court, that the property be sold in one parcel as real property is sold under execution, makes this section applicable, and when the sheriff became satisfied that James Landry was not or could not pay the amount of his bid, it was the duty of the sheriff to re-advertise and re-sell the property.

2.   The action of the sheriff, in stating to the proposed bidders the terms of the sale, and that it was to be a cash sale, and nothing would be received but money, was strictly in compliance with the order of sale as made by the court, and section 3318 of the act, in relation to the partition of real property. The highest bidder acquires no title to the thing purchased but by payment of the purchase money, and if he fails to do this within a reasonable time, a re-sale may lawfully be made. (*Hardesty* v. *Wilson*, 2 Gill. 486.)

3.   Appellant contends " that at the second sale had on the 30th day of March, 1891, Napoleon Landry was the highest and

best bidder, and when the property was struck off to him by the sheriff it was an absolute sale." At that sale there were several bidders. Landry bid eight thousand five hundred dollars; Lacrouts, eight thousand four hundred dollars. Landry's bid being the highest, the sheriff accepted his bid, with the understanding that it was a cash sale, and that it should not be considered a sale until the money was paid. Landry, understanding the terms of sale, asked for fifteen minutes' time to get the money. The sheriff granted his request, and at the same time, and in the presence and hearing of Landry, requested all the bidders and bystanders to remain, as it would be no sale without Landry should return within the time mentioned with the money to make his offer good. The people there assembled did remain, and after the sheriff waited thirty minutes, and Landry not returning, and the officer being informed that Landry claimed that he had thirty days in which to make his bid good, the sheriff proceeded to re-sell the property, and did sell it to F. S. Lacrouts for six thousand one hundred dollars, and the money was paid.

The sheriff as referee is vested with discretionary powers in the sale of property in partition. If he had reason to believe that Landry was an irresponsible bidder, he could and should have refused to entertain any offer made by him; but having conditionally accepted the bid, it was nothing but justice to all parties that Landry be granted the time he asked for to give him an opportunity to make his bid good; and he not having returned within the thirty minutes, it was the duty of the sheriff to consider Landry an irresponsible bidder and proceed as he did and re-sell the premises without unnecessary delay and the additional expense of re-advertising.

The order of sale emanated from the court. It became the law in this case, to which the referee had to yield unquestioning obedience. The bid was to be an unconditional cash bid. Neither the officer nor the bidders could impose or vary the terms of sale. (2 Freem. Judg. Sec. 300.)

In the case of *Wortman* v. *Conyngham*, 1 Pet. C. C. 243, Washington, J., said: " When a purchaser has neglected and refused to comply with the terms of sale, it is the duty of the marshal to offer the property at sale again, if he had time to do so." (See, also, *Illingworth* v. *Miltenberger*, 11 Mo. 86.) In *Thompson* v. *McManama*, 2 Disn. 214, Storer, J., speaking for

the court, said: "The duty of the sheriff, whenever he is required to sell real estate upon execution, is plain. *First.* He must demand-and receive the purchase money from the purchaser before he makes his return. *Second.* He must sell to the highest and best bidder. *Third.* If the purchaser neglects or refuses to pay the purchase money, or if he is not a real bidder, and it is evident that he has made his bid to postpone the sale or delay the creditor in the collection of his debt, it is the duty of the sheriff to disregard his bid and offer the property again for sale, as if no previous bid had been made." The sheriff did have the right to re-sell on the same day, without further advertisement, it being within lawful hours of sale. (*Humphrey* v. *McGill*, 59 Ga. 652.)

4. Appellant claims "that if the bid of Napoleon Landry for the sum of eight thousand five hundred dollars was rejected because made in bad faith, or by reason of his not having paid the purchase money, and the bid of F. S. Lacrouts, for eight thousand four hundred dollars, was made in good faith, then it was the duty of the sheriff, after the rejection of the Landry bid, to have accepted the Lacrouts bid of eight thousand four hundred dollars, and the property should have been struck off to him at that price without a re-sale." An answer to this complaint is that, at an auction sale of real property, the sale is not complete until the hammer drops; at any time before the property is struck off, the bidder may recall his bid. After the property is struck off to a bidder it is a complete contract; and on the party making the bid failing to comply with his part of the contract, and pay the sum bid, the sheriff is required to re-sell the property. The party aggrieved may have his action against the bidder for any loss that he may have sustained by reason of the failure of the bidder to make his bid good.

In this case, when the sheriff called out the bid of Landry, it being greater in amount than that of Lacrouts, that moment Lacrouts was released from any obligation to make his bid good, or any part thereof.

In the case of *Thompson* v. *McManama*, 3 Disn. 215, the highest bidder made a payment of twenty-five dollars on his bid of eight hundred and seventy-five dollars, and entered into an agreement with the sheriff that the balance, to-wit: eight hundred and fifty dollars, should be paid by a certain day; if not paid at the time, then the sheriff was to return the prop-

erty sold to the next highest bidder, whose bid was eight hundred and sixty dollars, and the twenty-five dollars paid was to be forfeited.  Upon an application by the sheriff for confirmation of the sale to the next highest bidder for eight hundred and sixty dollars, and to determine what disposition should be made of the twenty-five dollars, the court refused to confirm the sale and ordered the property re-sold. (*Swortzell* v. *Martin*, 16 Iowa, 522; *U. S.* v. *Vestal*, 4 Hughes, 467; Hil. Sales, p. 250, Sec. 4.)

5.    Appellant contends " that the sale ought not to be confirmed, because and for the reason that the property sold for a grossly inadequate price."   True it is that the sum of eleven thousand dollars was bid for the property at the first sale and eight thousand five hundred dollars at the second sale; but subsequent events go to prove that they were irresponsible bidders; that neither of the parties had any means of their own, but expected to receive aid from other parties that did not come to their relief.   It is also true that the sum of ten thousand nine hundred dollars and eight thousand four hundred dollars were the next highest bids at each of said sales, and that the parties making such bids were responsible bidders, but their bids were not accepted, and they were released from their offer to purchase.   If the bids of the Landreys were made in good faith, they were given ample opportunity to make them good; they being sons of appellant, it is fair to presume that the bids were made to delay the sale merely.   On the second hearing for confirmation, J. E. Gignoux testified that six thousand one hundred dollars was all that he would give for the property. After this evidence was admitted, the court offered to set the sale aside if the appellant would assure it that a greater sum than six thousand one hundred dollars could be realized from another sale, but such assurance was not given.   As a rule, something more than mere inadequacy of price must appear before a sale will be set aside, unless the inadequacy be so great as to shock the conscience.

In the cases of *Mining Co.* v. *Mason* and *Marcus* v. *Same*, 12 Sup. Ct. Rep. 887, under an order of sale, " the master in chancery received a telegram asking to have the sale postponed for a few days, Marcus offering to pay all expenses of postponement.   The master refused to comply with the request, and sold the property for seven hundred and ten thousand dollars.   The

day after the sale Marcus telegraphed that he would give seven hundred and twenty thousand dollars. The sale was confirmed to the parties giving seven hundred and ten thousand dollars on the day after the confirmation of the sale Marcus filed his petition setting up all these facts, and asking to have the sale set aside, offering to pay all expenses of another sale and gave a bond to the effect that he would pay nine hundred thousand dollars for the property. Upon the hearing it was held that the master in chancery properly ignored the telegrams; that it was Marcus' duty to intervene before confirmation, and as the selling price was not grossly inadequate, the sale should not be set aside." The fact that land was sold under a decree for an inadequate price is not ground for a re-sale in the absence of fraud. (*Nix* v. *Draughan,* 19 S. W. Rep. 669.)

Sales made by order of the court in partition are judicial sales, and when so ordered they are made in the same manner as property is sold under execution, at public auction, for money in hand, to the highest unconditional bidder. The referee is the ministerial officer of the law. He acts independently of the parties. They have no control over him, and so long as he confines his acts within the scope of his authority, doing as he is required to do by the mandate of the decree under which he acts, his acts will be upheld. We do not deem it necessary to review all the authorities which bear more or less upon each and every point involved in this appeal.

The principal cases are cited in the briefs of counsel. It is sufficient to say that we have not met with a case which, in our judgment, sustains the position of appellant. Nor have the very learned and industrious counsel who so ably represents the appellant, referred us to a case which sustains the views expressed by him in his argument. It is clear that if a party bids at an auction sale, knowing that he is not in a position to comply with the terms of sale, the sale is absolutely void and no title passes, and the bidder is not in a position to claim any rights under his bid. Neither is the appellant in a position to claim that the sheriff exceeded his instructions, by refusing to make returns of the sales to James and Napoleon Landry, and not tendering a deed to James Landry. If the sheriff was required to make returns of such bids and tender deeds, it is not easy to see how often such returns would have to be made, or the intervention of such bidders might delay the sale, if a

bid unaccompanied with the money could not be rejected.

The court having gone fully into the merits of the sale, and the proceedings had thereunder, upon the hearing for confirmation, and giving the Landrys every opportunity to make their bids good, and offering to set the sale aside provided the appellants would give assurance that a sum greater than six thousand one hundred dollars could be obtained upon a re-sale of the property, and such assurance was not given, and no fraud or collusion being shown to exist between the officer and bidders, the judgment of the court confirming the sale to Lacrouts is affirmed, and it is so ordered.